## OLDENBURG *et al. v.* NEW YORK CENT. & H. R. R. CO.

*(Superior Court of Buffalo, Special Term.   February, 1890.)*

1. RAILROAD COMPANIES—ACCIDENTS AT CROSSINGS.

In an action against a railroad company for the alleged negligent killing of plaintiff's intestate, it appeared that three of defendant's tracks, guarded by gates, crossed a street at the place of the accident.   A train standing on the middle track obstructed the view of the third track.   When deceased arrived at the crossing, the gates were closed for a passing train.   He waited for the gates to open; and, just after passing the middle track, he was struck by an engine and tender backing at an unlawful rate of speed down the third track, and concealed from view by the standing train.   *Held*, that the question of defendant's negligence was for the jury, and that the court properly refused to direct a verdict for defendant.

2. SAME—CONTRIBUTORY NEGLIGENCE.

Deceased, having waited for the gates to open, and seeing a team enter the opposite side of the crossing, had a right to take it for granted that the crossing was safe;

and his failure, after passing the standing train, to stop and look both ways is not such conclusive evidence of contributory negligence as will warrant the court in taking the case from the jury.

**3. SAME—EVIDENCE.**

Evidence as to the appearance of the injuries of deceased when he was taken out from under the engine is admissible as a statement, in part, of the accident, and also as a means of determining, from the character of the wounds, his position when struck by the engine.

**4. SAME—RATE OF SPEED—CITY ORDINANCE—PLEADING AND PROOF.**

An ordinance limiting the rate of speed of trains within the city limits, though not pleaded, is admissible in evidence to show that the train was running at an unlawful rate of speed.

**5. SAME—RULES OF COMPANY.**

Where, on cross-examination of the fireman on the engine causing the accident, plaintiff has called out the fact that several persons were allowed to get on the engine shortly before the accident, plaintiff, in order to ascertain whether the fireman's attention had not been diverted from his duties, may further ask whether this was not forbidden by defendant's rules, though the rules themselves are the best evidence.

Action by Sophia Oldenburg, and others, administrators, etc., of Charles Oldenburg, deceased, against the New York Central & Hudson River Railroad Company, for the alleged negligent killing of her intestate while attempting to cross defendant's railroad tracks on a public street in the city of Buffalo. The defendant had three tracks across the street at the place of the accident; the middle track being occupied by a standing train of cars, which made it impossible for a person attempting to cross from the north to see the third track. Besides the defendant's tracks, the street was also occupied by the tracks of two other companies. These tracks were all guarded by gates. When deceased arrived at the northern entrance of the crossing, the gates were closed; a passing train having just crossed. When the gates were opened, deceased attempted to cross, was struck by a passing locomotive on the third track, and killed. At the same time that decedent went upon the tracks from the north side, a woman in a wagon drove through the gates on the other side. Plaintiffs had a verdict for $2,500, and defendant now moves that it be set aside, and that a new trial be granted.

*Isaac S. Signor,* for plaintiffs. *James F. Gluck,* for defendant.

BECKWITH, C. J. On the trial, as well as on this motion, the defendant's counsel strenuously urged the correctness of his position that, on the whole case, the court should have directed a verdict for the defendant. With deference towards the learned counsel for the defendant, I cannot help thinking that the evidence as to the tracks, the crossing, the standing cars, the backing engine and tender, the rate of speed, the irregular "going in" of engines, the conduct of the gate-tender, as given by the plaintiffs' witnesses, and the circumstances of the situation generally made a case for the jury on the question whether the defendant was chargeable with negligence. There were the important circumstances that it was an engine with only a tender, and that it was backing down, concealed from view by standing cars, and at an undue rate of speed, and where there were numerous tracks, presumably with engines, bells, whistles, etc. The in-going train was not yet out of hearing.

Those circumstances also affect the question of the intestate's contributory negligence. An engine with only a tender attached, as every person much about railroads may have observed, moves often with a dull, rumbling sound, that scarcely gives a warning, where the air is filled with other sharp vibrations. This fact may partly explain the frequency of accidents caused by backing engines *separated from their trains. This is the second case tried* this term for killing a person by backing over him with an engine and tender, where the circumstances did not require rapid running. A bell, to be sure, might often be a sufficient signal and protection to a foot-passenger; but where there are a multitude of tracks, and confused noises, whistles, and bells, as

there are about the locality in question, proof of the ringing of a bell should have just that weight as evidence which the jury think was its value as a signal to the passenger. At the place where Oldenburg was killed there were several roads, each with several tracks, crossing the street. An inexperienced person, not familiar with the ground, in attempting to go across would be likely to feel that there was danger ahead of him and danger behind, danger at the right and danger at the left, and that he was in the hands of Providence or the gate-tender, and without the ability to tell from what point danger might approach. Besides, the cross-walk of plank, which the foot-passenger must follow, was rough, (Davis's testimony,) and yet, if a pedestrian should fall under an engine because he did not look where he stepped, he would be liable, on a trial, to be nonsuited for his negligence in that respect. I think the question of contributory negligence was properly left to the jury. The question was submitted to the jury by the court, as appears from the extract from the charge, upon the extremes of the case, and perhaps with some injustice to the plaintiff, upon the assumption of the accuracy of the testimony of some of the defendant's witnesses to the effect that Oldenburg did not look, nor pay any attention to the possibility of trains approaching, nor give any heed to the gateman's cries and signals. This testimony could possibly express only what were the appearances to the witnesses. It does not follow, because Oldenburg did not right about face to the west and east, that he did not give reasonable attention. The testimony of the old man who was the gate-tender strikes me, when I consider the circumstances, and the duties then bearing upon him, the impending danger to the woman in the wagon, and the other circumstances, as being "too particular on the particularities in particular," when he tells that he noticed every step and incident of the conduct of the intestate in attempting to cross the tracks, that he heard the bell of the backing engine ringing, and other particulars. The jury might have thought his testimony not weightier than the probabilities derivable from the circumstances. Besides, he was disputed as to what he did himself by Christensen and Wareing.

To my mind the circumstances made it doubtful whether the act of the gateman in letting down the gates, and calling out and motioning to the deceased, were in time to be of any avail to Oldenburg. He had been standing waiting at the north side for the gates to open. He saw the gates lifted, and a horse and wagon allowed to enter upon the crossing from the opposite side, where the gate-tender stood. Any man in the world who had not been technically indoctrinated with the caution to "look both ways" would have taken it for granted that it was safe to go across at that time: that it would be safe for the space of time it would take the woman with the old horse to cross. But suppose that he was bound to look. We must remember that the ordinary man, in going across the tracks, would have no reason for expecting danger on the third track more than on the others; that he would naturally fear the existence of danger on all sides, and could hardly be expected to give deliberate attention to the third track, "look west." But when Oldenburg reached the middle of the second track, if not too close to the projecting car, he might, as suggested by defendant's counsel, have been able to see a few feet up the third track; but, if so, he probably saw that the track, as far as it was in his sight, was then clear. But, if he walked close to the end of the projecting car,—which is probable, since, from its projecting over the walk unlawfully, it narrowed his passage-way after clearing the end of the car,—he had left a space equal to one step, or a step and a quarter, before the cross-beam or extreme projection of the tender moving across the line of his direction would strike him. Now, take a man in that situation. It was possible that he could save himself by stopping, if he dared to stop, and putting his head out from the standing car, and looking up the third track, or perhaps by taking one step beyond the car, and stopping, which step and stopping he must have calculated on beforehand.

But it was for the jury, as it seems to me, in view of all the circumstances, to say whether that could be absolutely required of the man. If the court had held, as a matter of law, that his omission to look instantly westward took away a right of action, the court would have decided that, with respect to a person who may be crossing railroad tracks, there is no such thing as a mutual care and contributory negligence, but that all the care is on the man who walks over the tracks; for if such a degree of care is first required by law, it being sufficient for absolute safety, under all circumstances, then the man exposed to the danger needs no help from the defendant in regard to his safety. Such a holding would exclude a consideration of certain other facts for which the defendant was directly responsible; as, for example, the standing of trains of cars in such a way as to obstruct the view of persons having occasion to travel on an important business street, which, if lawful in itself, must qualify the duty of the defendant in other respects; the standing of the particular car over a part of the footwalk, thereby restricting the line of vision up the third track; and allowing the engines to come down from behind the cars upon the crossing at a rate of speed which violates the ordinances, and without any fixed times of running. It is not surprising that the gate-tender should let persons, as he did Oldenburg and the woman with the old horse, into a place of danger. The engineer and fireman both testified that, in taking their engines from the depot into the round-house,—"coming in," as they called it, —no orders were received from the train dispatcher, and no time for running was fixed. This, perhaps, was the primary negligence. When the gate-tender opened his gates, and thereby signified to persons waiting to go across that it was safe to proceed, he himself may have been aware that a tramp engine might come down upon them from the ambush of standing cars; but persons crossing the tracks could not know it, and, when so called to cross, would have a right not to expect such a thing, although they might still be bound, as a matter of law, to look out for danger. But whether, under the circumstances that attended Oldenburg's attempt to go across, he exercised the care that could be reasonably expected, seems to me to have been plainly a question for the jury.

On the trial, plaintiff's counsel asked the witness Christensen, who saw the accident, and saw the deceased taken out from under the engine, the question: "How was the man injured when they took him out?" The defendant's counsel objected to the question as incompetent, irrelevant, and immaterial, and as tending to prejudice the jury; and, after the answer, moved to strike it out on the same grounds. I think the testimony was competent as a statement, in part, of the accident, and because it might be material to ascertain where he received wounds, in order to determine the position of the deceased when struck by the engine. The verdict does not indicate that the jury was prejudiced.

The defendant claims it was an error to admit in evidence the ordinance of the city of Buffalo prohibiting the running of the engines within the city at a rate of speed exceeding six miles an hour. The exception was upon the grounds that the ordinance was not pleaded, and was incompetent, irrelevant, and immaterial. It was offered as mere evidence on the question of negligence. Evidence should not be pleaded. The testimony (Christensen and Davis) shows the engine was running nine or ten miles an hour. I think it cannot be inferred that the deceased was just as liable to be killed if the engine had been running at the rate of six miles as at ten miles an hour. Therefore the evidence was competent. *Briggs* v. *Railroad Co.*, 72 N. Y. 26.

The defendant claims that it was error to admit parol evidence of the contents of defendant's rules, which prohibited the engineer and fireman from allowing persons to ride on the engine. This evidence was called for on a cross-examination of the fireman. The plaintiff's counsel called out from the wit-

ness that the engineer, at the depot, when starting to go into the round-house, allowed persons to get upon the engine to ride. It was a cross-examination of the witness to see if he was doing his duty as he understood it to be, and as to circumstances tending to exhibit the care he was exercising, and the possibility of his attention being diverted from his duties on the engine. The inquiry as to the rule was collateral; and, moreover, the answer did not harm the defendant, for he answered that the rules prohibited taking on passengers "when on the road." The motion must be denied, with costs.